LA BELLE v. FIDELITY LIFE ASS'N.

1. FRATERNAL BENEFICIARY ASSOCIATIONS—CHANGE OF BENEFICIARY —BURDEN OF PROOF—MENTAL COMPETENCY—UNDUE INFLUENCE— FRAUD.

In action by guardian of mentally incompetent widow of man insured under a fraternal beneficiary certificate, brought after defendant had made payment in full to deceased's son by a former marriage, who had been made sole beneficiary less than six months before death of insured and but shortly before he

went to make his home with the son out of the State, finding of trial court that plaintiff had failed to sustain her burden of showing mental incapacity upon part of insured to make change of beneficiary from wife to son, or undue influence or fraud in the procurement of the change *held*, amply supported by record.

2. SAME—CHANGE OF BENEFICIARY—FIDUCIARIES—PRESUMPTIONS—UNDUE INFLUENCE—EVIDENCE.

Contention that son of person insured under fraternal beneficiary certificate occupied a fiduciary relation to elderly father giving rise to presumption of undue influence in procuring change of beneficiary under certificate from mentally incompetent stepmother to son *held*, rebutted by testimony showing property left to insane widow was more than sufficient to care for her, and would be inherited by plaintiff, her guardian and daughter, and by failure to show that son was present with father when either the change of beneficiary was arranged for or change of a joint bank account with wife to joint account with son was made.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 9, 1943. (Docket No. 28, Calendar No. 42,378.) Decided September 7, 1943.

Assumpsit by Lucy LaBelle, guardian of the estate of Ida Upper, a mentally incompetent person, against Fidelity Life Association on an insurance benefit certificate. Judgment for defendant. Plaintiff appeals. Affirmed.

*Frederic T. Harward* and *Marr & Cahalan* (*Charles H. Swaby*, of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone* (*John A. Riordon* and *William J. Shaw*, of counsel), for defendant.

CHANDLER, J. Defendant is a fraternal beneficiary society, organized under the laws of the State of Illinois, and was and is authorized to do, and is

doing, business in the State of Michigan. On October 1, 1925, it issued to Judson Upper of Wyandotte, Michigan, its certain benefit certificate in the amount of $2,000.

The original beneficiaries in the benefit certificate were Ida Upper, second wife of the insured, in the amount of $1,000; Roy Upper, a son by the first marriage, in the amount of $500; and Lucy Upper, a daughter by the second marriage, in the amount of $500. At some later date, not disclosed by the record, the insured made a change in the certificate by making his wife the sole beneficiary.

On July 1, 1940, the insured, Judson Upper, made a written request to the correspondent of the appellee in Wyandotte that the beneficiary of his benefit certificate be changed from his second wife, Ida, to his son, Roy. This request, signed by the insured and witnessed by the correspondent, Mrs. Showalter, together with the original policy, was mailed to the home office of appellee at Fulton, Illinois. These were received by the secretary of appellee who thereupon had a photostatic copy made of the request for a change of beneficiary and attached the same to the original certificate or policy which was returned to the insured.

On July 5, 1940, the insured, at Trenton, mailed to his son Roy at Chicago, Illinois, the benefit certificate with photostatic copy of change of beneficiary attached thereto.

The insured died on December 22, 1940. The record does not disclose the immediate cause of death, but unquestionably during the later years of his life he was afflicted with chronic myocarditis, cardiac asthma and diabetes mellitus.

After the death of the insured, proof of death was filed with appellee by the beneficiary, and on January 8, 1941, appellee issued its check to the

said Roy Upper, the beneficiary, in the amount of $2,000, which check was paid on January 11, 1941.

On or about February 4, 1941, appellee received notice from appellant's attorneys of the death of the insured with a request for the necessary papers to make a claim on behalf of the second wife, Ida Upper.

The probate records for the county of Wayne, which were offered and received in evidence upon the trial of this case, show a petition filed by Judson Upper on February 25, 1926, to have said Ida Upper committed to an institution as an insane person. A commitment was entered committing her to Eloise Hospital and requiring her husband to pay for her maintenance at this institution at the rate of $30 per month. The record does not show when, if ever, she was released. However, the file contains another petition filed on July 5, 1939, by the daughter of said Judson and Ida Upper, Lucy LaBelle, again seeking her commitment, and shows that she was again committed to the Eloise Hospital on September 13, 1939. On February 18, 1941, a petition was filed by the said Lucy LaBelle praying for her appointment as guardian of Ida Upper and it appears that she was duly appointed as guardian.

On May 21, 1941, this action was instituted by said Lucy LaBelle as guardian of Ida Upper, seeking recovery on the policy hereinbefore described.

Upon trial without a jury, it was the claim of plaintiff that on the date of the change of beneficiary from Ida Upper to Roy Upper, July 1, 1940, the insured was not capable mentally of understanding the nature, meaning or value of the benefit certificate; that he did not know the natural objects of his bounty; that he did not have mental capacity to make a testamentary disposition of his property or to make a change in the beneficiary named in said

benefit certificate; and further, that said change of
beneficiary was obtained by his son Roy Upper by
fraudulently imposing his will upon the will of said
Judson Upper, thus causing him to execute said
change of beneficiary, and that at said time the said
Roy Upper well knew that the mental condition of
the insured was such that he was not capable of
understanding the nature and value of the certif-
icate, the nature and effect of the change in bene-
ficiary and did not have the mental capacity to make
such change; that the said change of beneficiary was
obtained for the purpose of defrauding the said Ida
Upper of the benefits of said certificate and to ob-
tain the same for himself.

There was but very little, if any, conflict of testi-
mony as to the facts except as to the mental condi-
tion of the insured at the time of and prior to the
change in beneficiaries. The record is quite con-
clusive that during most of the adult life of the said
Ida Upper she was a mentally incompetent person
and from 1926 to the time of the trial she was in-
sane, necessitating her confinement in an institution
for the insane, and that during most of said period
she was confined in an institution and her mainte-
nance therein paid for by her husband.

The record further discloses that the decedent for
some 26 years was employed as a motorman by the
Detroit United Railway, having a run between De-
troit and Trenton; that in 1930 this suburban run
was abolished and decedent then became an em-
ployee of the village of Trenton where he was regu-
larly employed from about the middle of 1930 until
August of 1939, at which time he was about 70 or
71 years of age and because of ill health his regular
employment was discontinued, although he did some
work for the village as late as May, 1940. The rec-
ord shows that considering his position in life he

was a rather shrewd business man and that his real estate accumulations alone at the time of his death consisted of three houses and some vacant lots; that the houses were income producing, rendering him an income of $90 per month, all of which real estate was held jointly by Mr. Upper with his second wife, Ida; and that he knew that his wife Ida would become the title owner of the real estate upon his death, and that his daughter, Lucy LaBelle, would be the sole heir to any property of which his wife died seized.

As before indicated, the testimony regarding the mental condition of the insured on or about July 1, 1940, was conflicting. However, the trial court, who heard the testimony and had the opportunity of seeing the witnesses and was in a position to determine the credibility of such witnesses, found that plaintiff had failed to establish the burden imposed upon her of showing mental incompetency, and that the testimony of the disinterested witnesses was convincing that the decedent was mentally competent at the time of making the change of beneficiaries in said policy. He further found that there were no facts or circumstances in the case indicating any persuasion on the part of the son Roy impelling the action of decedent in making the change, and entered a judgment of no cause of action. We quote the following from the findings and opinion of the trial court:

"I am unable to find, from a consideration of the testimony of various witnesses in this case, that the plaintiff has maintained the burden that rests upon her to sustain either the issue of mental incapacity, or that of undue influence or fraud.

"The testimony of the disinterested witnesses offered here is too strong to reach any other conclusion. The deceased knew that his wife was

protected by the joint title in the real estate, and that she had an income from this property.

"He knew, likewise, that he could not expect to live with his son unless there was some compensation offered to his son by way of board, and the other financial arrangements that were necessary for his keep.

"It is evident that he had an affection for his son at the time that he died, and that he understood the nature and effect of his actions.

"I am convinced that he was not, unduly influenced to make this change; that when he went to the office of the correspondent of the defendant company he fully realized the nature of the act which he was there completing, and that it was his intention to favor his son, Roy Upper, to the extent of making him the beneficiary in this policy; that at that time he was well aware of the status of his family, and of his relationship with his wife; that is, his daughter, the plaintiff in this case, as well as that of his son; that he was not impelled or persuaded to make any such movement other than for his own comfort, and his desire to obtain a home for himself.

"It does not appear that Roy Upper, at any time after he went to live with him, persuaded him not to go back to Detroit. In fact, the testimony shows that he arranged the transportation for him; that there were no threats or persuasion impelling his actions."

We are persuaded after a careful review of the record that the findings and conclusions of the trial court were correct, and that the testimony amply supports the result reached by him.

The contention of appellant is that the relation existing between Roy Upper and his father was a fiduciary one and that a presumption of undue influence arose which was not rebutted. A brief review of some of the salient facts upon which this

argument is based might not be out of place at this point.

On July 20, 1940, decedent made a will by the terms of which he bequeathed to his son Roy the proceeds of the funeral benefits in the Amalgamated Association of Street Electric Railway & Motor Coach Employees of America and also made his said son Roy the residuary legatee of all of his estate. He appointed Clarence E. Reid, attorney of Detroit, executor of the will.

The record is not clear as to the amount of the benefit certificate referred to in the will but there is some testimony indicating it might have been $1,800. Mr. Upper was advised by Mr. Reid, attorney for the association, that the benefits over and above his funeral expenses could only be disposed of by will. Later, and after decedent had gone to make his home with his son in Chicago, he changed his bank account amounting to about $780 which was joint with his wife Ida to a joint account with his son. Counsel contends that,

"In doing so he robbed the estate of Ida, his beloved wife, a woman whom shortly after he married, became insane, and who continued so on and off until the day of his death. The estate of Judson Upper was meagre. At the best, there was hardly enough to care for a woman in the plight Ida Upper was in. It is hardly conceivable that under such circumstances, he would voluntarily turn over to Roy, such a large portion of his estate. * * *

"He was easily swayed. If Judson Upper was mentally able to make this transfer, the only other reasonable explanation of his doing so was that he was influenced to do it against his will by Roy. It is significant that Roy never did a thing for him until just before he died and it was then during the few months he was with Roy that all this happened."

We find no merit in this contention.

The records and files of the probate court of Wayne county which were received in evidence show the allowance of the will in question over objection by appellant herein, from which order admitting the will to probate no appeal was taken. The first and final account of the executor shows the total assets received by him were $1,835. It did not show any disbursements whatever to the son Roy, but shows the payment of the widow's allowance at the rate of $100 per month for one year, the fees of the executor, and a balance on hand of $599.53 which was ordered to be turned over to the widow. It is, therefore, apparent that what the son received upon his father's death was the amount of the benefit certificate in defendant association and probably the balance of the joint bank account, and that the widow received approximately $1,800 in cash for her statutory allowance as well as title to the real estate hereinbefore mentioned. There is nothing in the record as to the value of this real estate. However, it does appear that it was producing a monthly income of $90 which means that its value was no inconsiderable amount. The annual income from said real estate is disclosed as being much more than was required for the maintenance of the widow where she had been maintained for most of the period since 1926, and which real estate the widow's only child, her guardian and appellant, will inherit in its entirety.

It does not appear that the son Roy was with his father either at the time the will was executed or at the time decedent changed the joint bank account from himself and wife to himself and said son.

Assuming that the son's relationship to his father was a fiduciary one and that the presumption of undue influence therefore follows, we find this pre-

sumption thoroughly met and rebutted by uncontradicted testimony and circumstances showing no undue influence or unfairness in these transactions.

The decree is affirmed, with costs to appellee.

BOYLES, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.